Commonwealth, Appellant, *v.* Billock.

Argued November 9, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Paul M. Petro,* Assistant District Attorney, with him *Jess D. Costa,* District Attorney, for Commonwealth, appellant.

*J. Sherman McLaughlin,* with him *Samuel Rodgers, Joseph P. Moschetta,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY WATKINS, J., April 13, 1972:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas, Criminal Division, suppressing the evidence in a complaint charging the defendant with a violation of The Drug, Device and Cosmetic Act. The court below held that the magistrate did not have reasonable cause to issue the search

warrant and the issuance was contrary to constitutional guarantees.

Trooper James C. Patt, a State Policeman for twelve years and a narcotics agent since November, 1968, was the sole witness at the Suppression Hearing. He had obtained the warrant and was the prosecutor in the case. His testimony includes practically everything contained in the warrant itself and he also testified that he gave additional information contained in his testimony to the magistrate. *Commonwealth v. Crawley*, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966).

The following facts were related to the magistrate at the time he obtained the search warrant:

On April 4, 1969, he received complaints regarding the residence located at 175 South Wade Street, Washington, Pennsylvania and conducted a surveillance on that date and observed a vehicle in front of the residence. He found the license number of the car to be in the name of Andrew Rockwell, one of the defendants.

On April 7, 1969, he received information from a confidential informant that Robert J. Billock of 175 South Wade Avenue, Washington, Pennsylvania was expecting narcotics through the mail on either the 18, 19 or 20th of April.

He testified that his informant obtained the information from association with the defendants. He also testified that this informant had provided information to him in the past which resulted in the arrest and conviction of one William Teuteberg and he, therefore, considered his informant reliable. Trooper Patt then alerted the postal authorities concerning the arrival of the suspected contraband. On April 18, 1969, the witness was notified by the U. S. Postal Inspector, John Parker, "that a letter bulkier than normal, which was discolored on the back had arrived at the Post Office

in Washington." The return address was Felix Pappalardi, 13 Kensington Market Place, New York City, New York.

Trooper Patt testified that he shook the letter. It was not opened, because it was first class mail, ". . . and by shaking the letter you could hear something in there like the sounds of seeds or powder or something shaking inside the letter".

On the same date the officer went to the Alderman, executed the affidavit for a search warrant which contained the information related above and alleged: ". . . there is probable cause and reasonable grounds for my believing that certain narcotic drugs and paraphernalia to wit: narcotic drugs (marihuana) and dangerous drugs, narcotic paraphernalia, smoking pipes, belonging to and/or in the possession of Mr. Robert Billock et al. John Doe are possessed, certain premises, described as a 2-story shingled residence, located at 175 South Wade Avenue, Washington, Penna."

On April 19, 1969, at 9 a.m., Trooper Patt and U. S. Postal Inspector Parker, plus two other State Troopers, went to the residence and what happened is described by Trooper Patt as follows: "The letter was delivered by Inspector Parker at that address and the letter was turned over to Mr. Billock; and then after Mr. Billock had received the letter then Officer Stanek, Paraska and I entered the house; knocked on the door and asked for Mr. Billock and at that time we entered the house and advised him that we had a Search Warrant and he had the letter in his hand, and it was at that time that I retrieved the letter from his hand and the Search Warrant was read to this individual. The letter was opened in his presence, and the letter contained a quantity of white powder." The return of the search warrant lists twenty-one (21) suspected narcotic items as the product of the search of the residence.

The question before us on appeal is whether there was probable cause for the issuance of the search warrant to search the premises. We agree with the Commonwealth that the warrant must be read as a practical document and not as a literary gem and common sense must be applied to the determination as to whether probable cause existed.

Probable cause was here furnished by information supplied by a reputable informant and corroborated by police investigation. Probable cause exists if the factual evidence, which the police officer swears to, would warrant a man of reasonable caution in believing that a crime was or is being committed. *Carroll v. United States*, 267 U.S. 132, 161, 45 S. Ct. 280, 69 L. Ed. 543 (1925).

The credibility of the informant and his reliability are provided in the warrant itself in that it stated: "Information from this confidential informant in the past has resulted in the arrest and conviction of William Teuteberg III, Washington, Co., Court, Washington, Pa."

The police investigation as described by Officer Patt corroborated the informant in regard to the receipt of mail containing narcotics. The informant's credibility was established under the tests set forth in Judge HOFFMAN's dissenting opinion in *Commonwealth v. Conner*, 217 Pa. Superior Ct. 85, 89, 90, 266 A. 2d 784 (1970). These tests being: (1) the history of informing and (2) the corroborating police investigation.

There was also probable cause to arrest Billock when the police entered the premises armed with a search warrant. They observed the air mail-special delivery envelope in the hands of Billock. This had already been examined by the police during the investigation. The search warrant was read to Billock, the letter seized and opened and the defendant placed under arrest.

The police had probable cause to arrest in view of the standards by the appellate court and the United States Supreme Court as summarized in *Commonwealth v. Murray*, 437 Pa. 326, 329, 263 A. 2d 886 (1970): " 'Probable cause' to arrest exists if 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man to reasonable caution in the belief' that the suspect had committed or is committing a crime. Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288 (1925). See also, McCray v. Illinois, 386 U.S. 300, 87 S. Ct. 1056 (1967); Commonwealth v. Brayboy, 431 Pa. 365, 246 A. 2d 675 (1968). And as we stated in Commonwealth v. Marino, 435 Pa. 245, 253, 255 A. 2d 911, 916 (1969): 'While it is true that suspicion and conjecture do not constitute probable cause (Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964)), it is equally true that probable cause means less than evidence which would justify conviction: United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741 (1965). It is only the probability, and not a prima facie showing, of criminal activity that is the standard of probable cause. Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223 (1964).' "

An argument was made that there were averments contained in the printed matter on the warrant form concerning gambling. This printed matter should have been stricken out, but in reading the material contained in the body of the affidavit, the printed matter is clearly irrelevant and should be treated as mere surplusage. The court below, said that it did not make its determination as to the invalidity of the warrant on the basis of the printed material but solely on the ground of lack of probable cause for its issuance. We will, therefore, discuss this matter no further.

In almost all search warrant cases involving proof of probable cause, the disposition rises or falls on the

peculiar facts of the individual case. A careful examination of the cases cited by the defendant can be easily distinguished from the facts from which probable cause was determined in this case.

The order of the Court of Common Pleas suppressing the evidence is reversed and the case is remanded for trial.