Commonwealth *v.* Temple, Appellant.

Submitted April 8, 1974. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

John R. Cook, Trial Defender, *John J. Dean,* Chief, Appellate Division, and *George H. Ross,* Public Defender, for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., February 27, 1975:

The appellant, Bernard Temple, files this direct appeal, *nunc pro tunc,* from his convictions after trial before a jury, on charges of armed robbery and fraudulent use of a credit card. Temple contends:

(1) The search and seizure of the credit card was made pursuant to an invalid warrant issued without probable cause,[1] and;

(2) The in-court identification of the appellant was improperly tainted by an uncounselled "illegal" lineup.

We must first consider the claim of invalidity as to the search warrant. The record shows that a gasoline credit card was taken forcibly (along with other items and money in a purse) from a victim in Pittsburgh in May 1968. The gasoline credit card was thereafter fraudulently used for purchases by the driver of a blue Cadillac.

---

1. Contrary to the discussion contained in the Dissenting Opinion in this case, the appellant does not argue on this appeal, nor did he contend in the court below, that his arrest was improper, but only that the search warrant obtained *after* the arrest was not issued on a showing of probable cause.

On December 19, 1968, police noticed a blue-grey Cadillac with two white males and one black male cruising in another section of the city. Its license number was noted. Less than a half hour later, two white and one black assailants robbed a victim at her home in the same vicinity. The police, figuring the men in the Cadillac they had seen cruising shortly before the crime might have been involved, located the car shortly thereafter parked by a bar in a nearby section of the city.

Upon closer examination, they found that the Cadillac bore two different sets of license plates, one covering the other. Upon a check they found the Cadillac to be registered to the appellant. The police entered the bar to ask questions, but all the patrons, including appellant, denied knowledge of the ownership of the car. Upon further questioning, appellant gave the police a fictitious name. He and his Cadillac were taken to the police station, where a warrant was secured for a search of the car— ostensibly to discover possible fruits of the day's robbery. Instead, the credit card from the May robbery was discovered on the sun visor of the car.

In the application for the search warrant, the police officer involved gave the magistrate written information, in proper form and under oath, of the following matters:

(1)　Details on the robbery, including dates, times and a description of the robbers;

(2)　Detailed facts of the observance by officers of the Cadillac and its occupants (including its license number) twenty minutes before the robbery in the same neighborhood;

(3)　The discovery of the car shortly thereafter in a nearby area with the two license plates;

(4)　The details of their investigation in the bar, including the fact that appellant gave them a false name, but was later found to be the registered owner of the Cadillac; and

(5)   The fact that the visible license plate was registered to a Buick.

We must evaluate whether the above-related facts support the finding of probable cause by the magistrate. It is clear that it is only the probability, and not a prima facie showing of criminal activity that is the standard of probable cause. *Beck v. Ohio,* 379 U.S. 89, 85 S. Ct. 223, 13 L.Ed. 2d 142 (1964) ; *Commonwealth v. Billock,* 221 Pa. Superior Ct. 441, 289 A. 2d 749 (1972). The magistrate of course need not be supplied with information sufficient to justify a conviction. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684 (1965). The magistrate is to take a "common sense" approach in evaluating the information. *Commonwealth v. Payton,* 212 Pa. Superior Ct. 254, 243 A. 2d 202 (1968). With these guidelines in mind, we hold that the series of facts described to the magistrate more than justified his conclusion that criminal activity was probably involved and probable cause existed for the search of the car in question.[2]

Appellant's second claim is that his in-court identification was improperly tainted by an earlier illegal lineup. While the appellant maintains that he repeatedly requested counsel at the line-up stage, the police testimony contradicted this claim. They said appellant was advised of his right to counsel and waived it.[3] The trial judge credited the police on this point and we must accord this conclusion great weight; there is certainly no abuse of discretion apparent. Moreover, our review of the lineup procedure explained in the record reveals that it was conducted in a fair manner and not in any way which

2.   *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970), cited by the Dissent, is inapplicable here. That case featured a stop and frisk on a street and did not involve a search warrant.

3.   This case is pre-*Commonwealth v. Richman,* 458 Pa. 167 (1974).

might be described as unnecessarily suggestive or conducive or irreparable mistaken identification. See *Stovall v. Denno*, 388 U.S. 293 (1967); *Foster v. California*, 394 U.S. 440 (1969). Lastly, the record demonstrates that the victim had an excellent and prolonged opportunity to view her assailant at the time of the crime, when her credit card was taken. He was in her plain view in a well lighted area for 10 to 12 minutes. At times his face was close to hers as he pushed her down on the seat of her car. She gave a good description of him to the police which description was not weakened at trial. There is ample testimony in the record to support the conclusion that her in-court identification was based upon her independent recollection of the appellant at the time of the crime. *Commonwealth v. Whiting*, 439 Pa. 205, 266 A. 2d 738 (1970).

Affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

The sole meritorious issue before the Court is whether there was probable cause to arrest appellant and to obtain a warrant to search his automobile.

At approximately 1:15 p.m. on December 19, 1968, three men, two white and one black, forcefully entered Mrs. Louis Wilhelm's home located in the Mount Washington area of Pittsburgh, tied up Mrs. Wilhelm, and ransacked the premises. Mrs. Wilhelm freed herself and called the police. Twenty minutes before the robbery, two officers had observed two white males and one black male riding in a blue Cadillac in the vicinity of the crime. For a reason not stated in the record, they recorded the license number of the vehicle. When the officers heard the police broadcast that included the racial array of Mrs. Wilhelm's assailants, they had the license number transmitted over the police radio. In turn, this information was received by Detective John Swearingen. He located the vehicle in an area of the city adjacent to the section in which the crime had taken place. Upon further in-

vestigation, the detective noticed that a second license plate was secured under the one reported over the radio. The detective entered a bar in the vicinity of the parked car and inquired as to the ownership of the vehicle. While the detective was still in the bar, several other police officers arrived on the scene. The officers had information that "Bernard Temple" owned the vehicle. No one in the bar acknowledged ownership of the automobile. After further investigation, the police took into custody three individuals, including appellant, who did not give an adequate accounting of their activity during the time of the crime. The appellant gave a false name, but after his arrest, he was recognized as Bernard Temple by police officers who had previously arrested him.

The Cadillac was towed from the bar to the Public Safety Building. Detective Donald Miller swore out a search warrant before a magistrate which authorized the search of the vehicle. The probable cause section of the warrant cited only the racial "combination of the subjects," the presence of two license plates on the Cadillac, and the appellant's failure to give an adequate account of his activity when questioned in the bar. The search revealed no contraband from the Wilhelm robbery. A credit card, however, was found and the owner of the card was summoned to police headquarters. The card belonged to Mary Sullivan who had been robbed on May 3, 1968. The police requested that Miss Sullivan attend a line-up. She identified the appellant, at which time he was placed under arrest for fraudulent use of a credit card, robbery, and assault and battery with intent to ravish.

In September, 1971, appellant moved to suppress the physical evidence seized in the search of appellant's vehicle. The motion was denied in October, 1971. Appellant was tried before a jury and was found guilty of robbery and fraudulent use of the credit card on April 13, 1972. A demurrer was sustained to the charge of assault and

battery with intent to ravish. Appellant was sentenced to three to six years' imprisonment for robbery and to a concurrent one year term for the fraudulent use of the credit card. Appellant filed motions for a new trial and in arrest of judgment which were denied on October 9, 1973.

The law governing this case is easily stated. The Fourth Amendment of the United States Constitution requires that the police must have "probable cause" before they can lawfully make an arrest or secure a search warrant. See also, Pa. Const. art. 1, §8. Probable cause has been defined as the existence of "facts and circumstances, within the arresting officer's knowledge and of which he had trustworthy information, sufficient to warrant a man of reasonable caution in the belief that the arrested person has committed or is committing a crime." *Commonwealth v. Brayboy,* 431 Pa. 365, 369, 246 A. 2d 675 (1968). Evidence secured on the basis of an invalid warrant must be suppressed subsequent to an appropriate pretrial motion. *Coolidge v. New Hampshire,* 403 U.S. 443 (1971) ; *Mapp v. Ohio,* 367 U.S. 643 (1961).

Although the rule is easily stated, the application of the definition of probable cause is difficult because each case revolves around distinct fact situations. *Commonwealth v. Billock,* 221 Pa. Superior Ct. 441, 289 A. 2d 749 (1972). Our Supreme Court, however, has addressed a similar factual situation. In *Commonwealth v. Berrios,* 437 Pa. 338, 263 A. 2d 342 (1970), the police received a radio call that a shooting had occurred in Philadelphia, that two black men dressed in dark clothing and a Puerto Rican dressed in light clothing had been seen leaving the crime and were walking east on Ontario Street. Within twenty minutes of the incident, the police saw a black male dressed in dark clothing and a Puerto Rican dressed in light clothing walking east on Ontario Street. The police stopped the two men. The patdown revealed a gun on the person of one of the men.

In *Berrios,* the Commonwealth did not allege that the police had probable cause for the arrest. Rather, the Commonwealth contended that the stop was legal under the less stringent test laid out in *Terry v. Ohio,* 392 U.S. 1 (1968), whereby the police may conduct a patdown for their protection if they have a reasonable belief that criminal activity is afoot and that the suspect may be armed and dangerous.

In the instant case, the Commonwealth contends that the scant information possessed by the police was sufficient basis for a legal arrest and for a valid search warrant. The facts in the officer's possession were that three males, two of whom were white and one of whom was black, were seen in the area of the crime twenty minutes prior to its completion, that the automobile seen in the vicinity possessed two sets of license plates, and that no one in a nearby bar acknowledged ownership of the car. The evidence in this case is less substantial than that in *Berrios.* In *Berrios,* the two suspects were in even closer proximity to the scene of the crime than in the instant case. The description in *Berrios* included the clothing worn by the three suspects; here the only description was of the race and gender of the three suspects.

Thus no probable cause existed either to arrest the appellant or to secure a valid search warrant. Therefore, the lower court should have granted the motion to suppress the evidence seized from the appellant's vehicle. Judgment of sentence should be reversed and a new trial granted.