454 A.2d 561

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Matthew M. GANNON, Jr.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed Dec. 23, 1982.

332

Kristine F. Hughey, Assistant District Attorney, Media, for Commonwealth, appellant.

Richard H. Anderson, Media, for appellee.

Before PRICE, WATKINS and MONTGOMERY, JJ.

PRICE, Judge:

■ This is an appeal by the Commonwealth from the order of the court below suppressing evidence which was seized pursuant to two warrants executed at appellee's residence and at appellee's bank.[1] We reverse the lower court's suppression order.

1. The Commonwealth may appeal from a pre-trial ruling where the practical effect is to terminate the prosecution and where it appears that the order suppressing evidence will substantially impair the prosecution of the case because the Commonwealth may not present all of its available evidence. *Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978), *Commonwealth v. Barnett,* 471 Pa. 34, 369 A.2d 1180 (1977), *Commonwealth v. Kunkel,* 254 Pa.Superior Ct. 5, 385 A.2d 496 (1978).

On August 16, 1979 a search warrant was issued to search the premises of 314 W. 21st Street, Chester, Pennsylvania. The affidavit reports allegations of Lillian Tonden, 72, that her bank accounts at Fidelity Bank had been depleted by more than $30,000 and that more than one thousand stock shares, valued at $50,000 had been redeemed by her granddaughter, Patricia Gannon, within the past 18 months without Mrs. Tonden's approval or consent. According to the affidavit, Mrs. Tonden, a widow, placed her granddaughter's name on her savings and checking accounts at Fidelity Bank to enable Mrs. Gannon to assist the elderly woman with her banking needs. Mrs. Gannon was given permission to withdraw money for the benefit of Mrs. Tonden only. After a brief visit to the hospital, Mrs. Tonden was informed by a friend that Mrs. Gannon had been spending "plenty of money." Mrs. Tonden checked her accounts at Fidelity and discovered that nearly $30,000 had been withdrawn. At that point she made inquiries to Sun Oil Company of whose stock she held 1322 shares. She was informed that over 1000 shares (valued at approximately $50 a share) had been redeemed by Mrs. Gannon.

Mrs. Tonden also told police that when she confronted her granddaughter concerning the bank accounts Mrs. Gannon returned $22,000. Mrs. Tonden did not confront her concerning the redeemed stock.

The affidavit also provides details concerning the police investigations following Mrs. Tonden's report. In August, 1979, Elizabeth Larken told the investigating detective that she had handled a transaction in which Patricia Gannon had sold 300 shares of the Sun Oil stock. Furthermore, Mrs. Tonden's attorney was questioned and reported that he had received confirmation from the bank of the depleted sum in Mrs. Tonden's savings account. Thereafter, under Mrs. Tonden's instruction, he placed a freeze on the accounts.

Based on this information the first warrant in question was issued for the home of Mrs. Gannon at 314 W. 21st Street, Chester, Pennsylvania authorizing the search for and seizure of "[c]opies of all bank records, statements,

cancelled checks, etc., from February of 1978 to present time." The execution of the warrant produced various bank receipts, records of transactions with Sun Oil Stock and papers referring to automobile purchases and loans.

The second warrant was issued pursuant to the identical probable cause affidavit four days later for the premises of Southeast National Bank, Operation Center, Concordville, Pennsylvania, authorizing the seizure of "Checks, Deposit Slips and any other bank documents regarding the account in the name of Matthew M. Gannon, Jr. and Patricia Ann Gannon, 314 W. 21st Street, Chester, Pennsylvania[,] Master # 0508306–8–00."

On January 2, 1980 appellee Matthew M. Gannon, Jr. was arrested and charged with 121 counts of theft and conspiracy in connection with the depletion of his wife's grandmother's assets. Gannon filed an omnibus pre-trial motion on which a hearing was held. On April 17, 1980, the Honorable Robert A. Wright of the Court of Common Pleas of Delaware County entered an order suppressing all evidence seized in the execution of both warrants.

The Commonwealth argues that the issuing authority properly determined probable cause to support the search for banking records in defendant's residence. We agree.

The lower court found the affidavit insufficient in several respects. Specifically, Judge Meade objected to the affidavit because it failed to set forth any facts to prove 314 W. 21st Street was the residence of Patricia Gannon, because it failed to mention Matthew Gannon's name, and because it failed to offer any proof that the bank receipts would indeed be found at the residence. We do not agree with the court below that these factors caused the magistrate's finding of probable cause to be unreasonable and, therefore, violative of the Fourth Amendment of the United States Constitution.

■ The general definition of probable cause sufficient to satisfy the Fourth Amendment was stated by the Pennsylvania Supreme Court in *Commonwealth v. Thomas*, 448

Pa. 42, 52, 292 A.2d 352, 357 (1972): "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted."

The requirements of a probable cause finding are tempered by the courts so as not to impede the goals and obligations of law enforcement. Accordingly, "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial." *Commonwealth v. Frye*, 242 Pa.Superior Ct. 144, 148, 363 A.2d 1201, 1203 (1976), and a preference is accorded by the courts to the issuing authority in doubtful or marginal cases. *Id.*, 242 Pa.Superior Ct. at 150, 363 A.2d at 1203. In reaching our decision in the instant case we are especially mindful that the courts are not to take an overly technical approach on evaluating the information supplied to the magistrate in a search warrant application but should evaluate it in a common sense and practical manner. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Commonwealth v. Sangricco*, 475 Pa. 179, 379 A.2d 1342 (1977); *Commonwealth v. Stamps*, 260 Pa.Superior Ct. 108, 393 A.2d 1035 (1978), *aff'd.*, 493 Pa. 530, 427 A.2d 141 (1981); *Commonwealth v. Frye, supra.*

In *Commonwealth v. Frye, supra*, marijuana seized during the execution of a search warrant for a residence was suppressed by the lower court judge. On appeal by the Commonwealth the appellees emphasized the fact that the affidavit was devoid of any statement that the informant observed marijuana at the Frye residence or that the informant had drawn any such inferences. "Rather it was the police and the issuing authority who concluded that [the defendant] was storing marijuana in his residence." *Id.* 242 Pa.Superior Ct. at 148–149, 363 A.2d at 1204. This court, however, did not find this to be fatal to the validity of the search warrant: "Was there probable cause to support such a conclusion? Common sense compels an affirmative an-

swer." We reasoned that since marijuana has to be secreted in a safe place, "a man of reasonable caution would be warranted in believing that marijuana was being kept at Frye's residence." *Id.*

■ Likewise, in the present case, it is only a matter of common sense to assume that the most likely place to find the bank records would be in Mrs. Gannon's residence. "[T]he law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude all possibility that the sought after article is not secreted in another location." *Commonwealth v. Forster,* 253 Pa.Superior Ct. 433, 437–438, 385 A.2d 416, 418 (1978).[2]

■ As regards the ownership of the residence to be searched, the fact that the affidavit offered no proof that Patricia Gannon owned or resided at 314 W. 21st Street does not render the affidavit, when taken as a whole, insufficient to establish probable cause. Again, a common sense reading compels the assumption that under these circumstances Mrs. Gannon's grandmother was aware of her residence. Granting the issuing magistrate the deference to be accorded in marginal cases, we cannot accept the finding of probable cause violative of the Fourth Amendment for this reason.

2. *See also, Commonwealth v. Rambo,* 250 Pa.Superior Ct. 314, 323, 378 A.2d 953, 958 (1977), *rev'd. on other grounds,* 488 Pa. 334, 412 A.2d 535 (1980) ("if a common sense reading of the affidavit supporting a search warrant indicates that sufficient information was provided the issuing magistrate to show the probability of illegal activity or contraband at the place to be searched, our court will not find the warrant invalid.")

The lower court cited *Commonwealth v. Morris,* 265 Pa.Superior Ct. 589, 402 A.2d 702 (1979) in support of its findings. There we stated that it would be mere guesswork to assert in an affidavit that a young boy's B.B. gun would be found in a certain place. We find *Morris* to be distinguishable from the present case. It is far more reasonable to assume an adult woman's banking receipts and records are in her home than it would be to assume the location of the toy in *Morris.*

■ The appellee also contends, and the lower court agreed, that the evidence seized at the residence must be suppressed because the supporting affidavit made no mention of appellee Matthew Gannon. We, however, agree with the Commonwealth's analysis of this issue and hold that a search warrant need not identify a specific individual who is the object of the search but need only establish that probable cause exists to search the premises and to seize the identified objects. By so holding we follow the language of the United States Supreme Court in *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525, reh. den., 439 U.S. 885, 99 S.Ct. 231, 58 L.Ed.2d 200 (1978) in which Justice White wrote that probable cause as related to search warrants means a reasonable basis for belief that criminally related objects are in the place which the warrant authorizes to be searched:

> The critical element in a reasonable search is not that the owner of the property is suspected of crime but that the specific 'things' to be searched for and seized are located on the property to which entry is sought.

*Id.* 436 U.S. at 557, 98 S.Ct. at 1977.

Therefore, we find no basis for suppressing the bank receipts from the joint bank account of Matthew and Patricia Gannon on the grounds that appellee was not named in the probable cause affidavit. We find there was sufficient probable cause to believe that banking records evidencing the theft of Mrs. Tonden's missing funds would be found at 314 W. 21st Street. This is enough to sustain the issuance of the warrant.

■ The lower court also found that any documents concerning the Gannons' auto purchases which were seized should be suppressed because they were not particularly described in the warrant. Slip op. at 3, 7.

In *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971), the search warrant in question specified a "pocket knife" whereas a "kitchen knife" was seized. The court ruled that to suppress the kitchen knife would be hypertechnical and contrary to the commonsense approach. *Id.*,

446 Pa. at 73, 285 A.2d at 514. The court noted that several courts have ruled that "where the items to be seized are as precisely identified as the nature of the activity permits and an exact description is virtually impossible, the searching officer is only required to describe the general class of the item he is seeking." *Id.* We find this rule properly applicable in the present case.

■ We are convinced that the detectives investigating Mrs. Tonden's report were not conducting a random, exploratory search but were conducting a search in good faith for records relating to the missing assets. "It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search." *Commonwealth ex rel. Stoner v. Myers,* 199 Pa.Superior Ct. 341, 345, 185 A.2d 806, 808 (1962). Documents pertaining to automobile purchases are reasonably related to the financial records of a person and her spouse, and therefore, the seizure of these documents in execution of the warrant was not unreasonable.

■ We also reject appellee's assertion that the affidavit failed to mention any dates or set any time frame in which to place the alleged criminal activity, causing the search warrant to be invalid due to staleness. In *Commonwealth v. Shaw,* 444 Pa. 110, 281 A.2d 897 (1971), the Pennsylvania Supreme Court articulated the constitutional requirements regarding the necessity that a search warrant be based on current information:

> In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a decision may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued.

*Id.,* 444 Pa. at 113, 281 A.2d at 899.

■ We disagree that this rule commands suppression of the evidence seized during the execution of the warrant for the Gannon residence. Specifically, the warrant was not, in

fact, devoid of a time frame. The police officer described the items to be seized as "[c]opies of all bank records, statements, cancelled checks, etc. from February of 1978 to present time." The limit placed on the dates of the records authorized to be seized coincided with the death of Mrs. Tonden's husband in February of 1978, shortly after which Mrs. Tonden put Mrs. Gannon's name on her bank accounts and, according to the affidavit, began missing money. "Evidence of criminal activity at some prior time will not support a finding of probable cause on the date that the warrant issues unless it is also shown that criminal activity continued up to or about that time." *Commonwealth v. Hagen*, 240 Pa.Superior Ct. 444, 450, 368 A.2d 318, 321 (1976). We are satisfied that the warrant and its accompanying affidavit presented probable cause to believe that criminal activity had occurred since February 1978 and was continuing.

We hold that the warrant for the Gannon dwelling was issued upon probable cause and that the evidence seized therein in execution of the warrant is admissible.

 The second issue involved in this appeal is whether the seizure of bank records from the joint account of Matthew M. Gannon and Patricia Ann Gannon at the Southeast National Bank, Concordville, Pennsylvania was constitutionally reasonable.

The lower court held that the warrant to search the bank was invalid because the affidavit did not establish probable cause and because evidence seized pursuant to the warrant amounted to fruit of the poisonous tree under the rule of *Wong Sun v. United States*, 371 U.S. 471, 488, 489, 83 S.Ct. 407, 417, 418, 9 L.Ed.2d 441 (1963). Slip op. at 8–10. We disagree.

Our finding that the warrant for the Gannon residence was valid disposes of the issue of whether the evidence gathered at the bank was fruit of the poisonous tree.

 However, the Pennsylvania Supreme Court in *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979),

*cert. den., DeJohn v. Pennsylvania,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980), held that under Article 1, Section 8 of the Pennsylvania Constitution "bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank." *Id.,* 486 Pa. at 44, 403 A.2d at 1291. Therefore, when law enforcement officers search and seize bank records, the activity must be adjudged to be reasonable and supported by probable cause.

In the case presently before us the same affidavit presented for the warrant for the Gannon residence was presented for the warrant for the Southeast National Bank. Appellees argued and the lower court stated that this affidavit was insufficient to support a finding of probable cause because it never mentioned Matthew M. Gannon, Jr., the Southeast National Bank or how the police officers obtained information leading them to the Southeast National Bank. We do not find these arguments compelling and we, therefore, reverse the lower court's order to suppress the bank records.

We are convinced that an overtechnical reading of this particular warrant would not serve the interests of justice or the purpose and policy of the exclusionary rule. As always in these types of cases this court is presented with the problem of balancing competing social values: "deterrence of police misconduct, on one hand, and conviction of guilty persons, on the other." *Commonwealth v. Bradshaw,* 290 Pa.Superior Ct. 162, 167, 434 A.2d 181, 183 (1981). We cannot find any abuse of police power in the seizure of these records that would be deterred by suppressing evidence of alleged criminal conduct.

The argument asserted by appellee is in substance the rule provided in Pa.R.Crim.P. 2003(a).[3] The rule mandates that the issuing magistrate look only to the four corners of

---

**3.** Rule 2003(a) provides:

(a) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

the affidavit to make a finding of probable cause. In *Commonwealth v. Luddy*, 281 Pa.Superior Ct. 541, 422 A.2d 601 (1980), *cert. den., Luddy v. Pennsylvania*, 454 U.S. 825, 102 S.Ct. 114, 70 L.Ed.2d 99 (1981), we stated with regard to this rule:

> However, it is also clear that search warrant affidavits are to be read in a sympathetic, common sense manner, with due regard for the hectic conditions under which they are often prepared. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Commonwealth v. Billock*, 221 Pa.Super. 441, 289 A.2d 749 (1972). Furthermore, an affidavit is to be considered as a whole....

*Id.* 281 Pa.Superior Ct. at 554, 422 A.2d at 608.

As in *Luddy*, the affidavit as written did clearly imply that the police were investigating the disappearance of a considerable amount of assets and were specifically investigating the financial records of Patricia Gannon. Common sense would tell us that such an investigation would also lead into financial records Mrs. Gannon held jointly with her husband, the appellee. Inclusion of greater detail in the second affidavit (e.g., the name of the Southeast National Bank, an up-to-date explanation of the investigation) would obviously have strengthened the entire statement. We cannot emphasize too strongly the advisability of detailed affidavits. In the present case, however, "it does not appear that [the police officer's] failure to do so was with any intent to mislead ...", *Commonwealth v. Luddy, supra*, 281 Pa.Superior Ct. at 556, 422 A.2d at 609, or with any intent to conduct a groundless and purely exploratory search. The warrant itself specifically identified the name and number of the account to be searched. Keeping in mind the warrant's presumptive validity, we find the search of the joint bank records of Matthew and Patricia Gannon reasonable and within the confines of the Constitutions of the United States and the Commonwealth of Pennsylvania.

The order of the trial court suppressing the evidence seized in execution of the two search warrants as well as

the "flow chart" prepared by the Commonwealth explaining the alleged diversion of funds is reversed and the matter remanded for proceedings consistent with this opinion. Jurisdiction is not retained and the parties will have their full rights as to appeal upon conclusion of the further proceedings.