464 A.2d 1320

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Doreen PRICE.**

Superior Court of Pennsylvania.

Argued March 29, 1982.

Filed Aug. 19, 1983.

Mark S. Gurevitz, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Lenard H. Sigal, Philadelphia, for appellee.

Before WIEAND, McEWEN and POPOVICH, JJ.

McEWEN, Judge:

 The Commonwealth appeals from an order granting a pretrial motion to suppress physical evidence seized from the residence of appellee pursuant to a search warrant. Since we conclude, contrary to the finding of the Common Pleas Court, that the search warrant was adequately supported by probable cause, we reverse the order of suppression and remand for trial.[1]

---

**1.** Our examination of the record has led to the independent conclusion that the instant suppression order will finally terminate the prosecution, since it is clear that the prosecution could not proceed without the evidence seized pursuant to the search warrant. Therefore, the order suppressing the physical evidence seized is appealable. *See Commonwealth v. Lapia,* 311 Pa.Super. 264, 457 A.2d 877 (1983).

The search warrant challenged here was executed by members of the narcotics unit of the Philadelphia Police Department on October 9, 1980, at the apartment of appellee located at 1241 Catherine Street in the Richard Allen Housing Project. As a result of the search, the police officers seized fourteen packets of heroin, five plastic bags of amphetamine, one bag of cocaine, one envelope containing marijuana and a second envelope containing marijuana and also capsules of amobarbital and secobarbital, all of which were seized from the handbag of appellee when they executed the warrant. Appellee was arrested and charged with possession of and possession with intent to deliver controlled substances. 35 P.S. § 780–113(a)(16), *id.*, § 780–113(a)(30). Appellee subsequently filed a pre-trial motion to suppress the physical evidence seized pursuant to the search warrant, based upon her contention that the warrant authorizing a search of her residence was invalid since it was "not supported by probable cause." The motion to suppress was presented to the court on the basis of a stipulated statement of facts drawn entirely from the search warrant affidavit. The full text of the affidavit of probable cause in the search warrant reads:

On 10–8–80, a concerned citizen who stated that she wish to remain anonymous related the following to the affiant: She stated that she lives in the Richard Allen Project and was very upset with the drug pushers in her neighborhood. She further stated that her 16 year old son goes to 1241 Catherine Street and buys marihuana from Doreen Price inside her apartment 8L. She confronted her son with the marihuana and he told her the following: The son collects money from his friends and goes to Doreen Price's apartment to purchase whatever they asked for. The son purchased from Doreen on 10–7–80, twenty-five (25) manila envelopes of marihuana and ten (10) packets of heroin for a total of $170.00. Five of these manila envelopes of marihuana were found by the mother in her son's room. She refused to turned them over to the police for fear of reprisal for her son once his name was known. The son further stated that

he calls Doreen on 985–0230, tells her what he wants, she makes up his packet, which she delivers to him when he arrives. He returns to the Richard Allen Project and distributes the items purchased among his friends. As a result of this information, the affiant checked with the Phila. Housing Authority which revealed that the apartment is registered to Doreen Price. A check with police records revealed she has been issued Phila. Photo number 269845, with prior contacts with police while living at 1241 Catherine street apartment 8L. The telephone was checked through Bell Security which revealed it is registered to 1241 Catherine street apartment 8L. The affiant went to this location on 10–9–80 between the hours of 12:30 pm and 1:30 pm, during this time, while standing in the stairwell, I could hear a male and female voice from within discussing prices. The male left a few minutes later and while the door was open, I could smell the strong odor of marihuana coming from within the apartment. Therefore, I have reason to believe that the above person does keep and sell controlled substances from 1241 Catherine street apartment 8L.

The Common Pleas Court determined that the second prong of the *Aguilar/Spinelli* [2] "two pronged test" for determining whether there is sufficient probable cause for the issuance of a search warrant was not met since the police officer affiant did not have any basis for crediting the hearsay report of the informant. The reasons provided by the hearing judge for his determination were:

The informant had never provided prior reliable information; the informant's factual information was not corroborated by any other source (except for name, address and the phone number, all of which can be corroborated by the telephone book); the informant's statements were definitely not made against his/her penal interest and there was no evidence that the defendant's reputation supported the tip. (Slip Op. at p. 3).

2. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The court further recognized that the tip was, in effect, a double hearsay report—the underlying circumstances of the tip provided by the first anonymous informant (the mother), having been based upon hearsay information received from a second unidentified first time informant (the son). (Slip Op. at p. 2). As a result, the hearing judge determined that probable cause for the issuance of a search warrant was lacking and granted the motion to suppress all physical evidence seized as a result of the search. On appeal, the Commonwealth argues that the affidavit of probable cause in the search warrant set forth more than sufficient information to support a finding of probable cause and that the order of the Common Pleas Court granting the motion to suppress was clearly erroneous. We agree.

The United States Supreme Court recently abandoned, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the "two-pronged test" for evaluating the sufficiency of search warrant affidavits that had been established by its decisions in *Aguilar v. Texas, supra,* and *Spinelli v. United States, supra,* and declared the decision of the majority of the court to "reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations." *Id.* at ——, 103 S.Ct. at 2332. *Citing, Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The court observed in *Gates* that a totality of the circumstances approach "is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." *Id.* 462 U.S. at ——, 103 S.Ct. at 2328. Central to the probable cause standard is the idea that it is a "practical, non-technical conception," "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.*

In reaching its decision to abandon the *Aguilar/Spinelli* test, the Court reasoned, *inter alia*, that:

> [t]he 'two-pronged test' directs analysis into two largely independent channels—the informant's 'veracity' or 'reliability' and his 'basis of knowledge.' There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in a totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability (citations omitted).

> Unlike a totality of circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the 'two-pronged' test has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues than cannot sensibly be divorced from the other facts presented to the magistrate.

*Id.* at —– – —–, 103 S.Ct. at 2328–2330. *See also Commonwealth v. Prosdocimo*, 308 Pa.Super. 187, 197–98, 454 A.2d 84, 89 (1982).

After emphasizing the preference accorded to the warrant procedure, the court went on to observe that:

> [T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable cause determinations of magistrates than is the 'two-pronged test'.

*Illinois v. Gates, supra*, 462 U.S. at —–, 103 S.Ct. at 2331.

Under the revived traditional test, the court stated that "[t]he task of the issuing magistrate is simply t

practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at ——, 103 S.Ct. at 2332.

In reasoning to this decision the court declared that these elements, e.g., the informant's "veracity", "reliability" and "basis of knowledge", are "all highly relevant in determining the value of his report." *Id.* at ——, 103 S.Ct. at 2327. However, the court stated that "these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* (footnote omitted).

■ It is to be noted that the hearing judge in this case, the distinguished Judge Alfred J. DiBono, did not have the benefit of this decision of the United States Supreme Court since his decision and opinion had preceded the *Gates* decision. Appellant, here the Commonwealth, has preserved the precise issue addressed in *Gates* and is entitled to the benefit of the decision since the pre-trial suppression issue raised here was on direct appeal at the time the decision in *Gates* was rendered. *See generally Commonwealth v. Hernandez,* 498 Pa. 405, 446 A.2d 1268 (1982); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968). *See also Commonwealth v. Glasco,* 298 Pa.Super. 189, 444 A.2d 724 (1982).

■ Appellee would contend, of course, that *Gates* was not the law at the time that the police sought the warrant from the magistrate and that, therefore, *Gates* is inapplicable and cannot now be applied retrospectively to validate a search warrant already found defective under the two-

pronged test. This assertion of appellant overlooks the fact that an effect of the *Gates* decision was to enable the State of Illinois to proceed to trial against John Gates and to utilize in the presentation of the case of the prosecution the very evidence seized pursuant to the warrant of the magistrate but suppressed by the hearing judge. It must also be noted that we do not here decide—nor need we, by reason of our holding, need to discuss—the argument of the Commonwealth that, aside from the *Gates* case, there was sufficient evidence to enable a magistrate to conclude there was probable cause for the issuance of a warrant.

The factual situation presented in *Illinois v. Gates, supra,* was analogous to that presented in the instant case. In *Gates,* the Bloomingdale Police Department received an anonymous handwritten letter in the mail which identified a married couple by the name of Lance and Sue Gates who, according to the letter, made their living entirely by selling drugs. The letter described the condominium development in the Bloomingdale area where they resided, stated that "most of their buys [were] done in Florida", and outlined their method of operation by describing their trips to and from Florida for the purchase and transportation of drugs to Illinois. The letter indicated that the wife drove the couple's car to Florida where she would leave it to be loaded with drugs and that the husband would then fly to Florida and drive the car loaded with the contraband back to the Chicago area. The informant's letter provided a specific date on which the wife would be driving to Florida and advised that the husband would fly down to Florida a few days later and return with the automobile. The letter further advised the authorities that the car would be loaded with over one hundred thousand dollars worth of drugs on the return trip and that, at the time of the writing of the letter, the couple had over one hundred thousand dollars worth of drugs stored in their basement.

The information provided in the letter was investigated by the Bloomingdale Police who determined that (1) Lance Gates had been issued an Illinois driver's license and a specific address in the Bloomingdale area; (2) an individual

designated as "L. Gates" had made a reservation for a flight from Chicago to West Palm Beach, Florida, on May 5, just two days after the wife was, according to the letter, scheduled to drive to Florida. The Bloomingdale Police then made arrangements with an agent of the Drug Enforcement Administration for surveillance of the May 5 Eastern Airlines flight, who subsequently reported that Gates had boarded the flight and had been placed under surveillance by federal agents after he had arrived in West Palm Beach. It was further reported that Gates took a taxi to a Holiday Inn where he occupied a room registered to Susan Gates and that at 7 a.m., the morning after he had arrived, Gates left the motel with an unidentified woman in a Mercury bearing Illinois license plates and drove northbound on an interstate freeway commonly used by persons traveling to the Chicago area. The agent also informed the police that the license plate number on the Mercury was registered to a Hornet station wagon titled in Gates name. On the basis of this information, the Bloomingdale Police prepared an affidavit setting forth the details of the investigation made on the basis of the anonymous letter and affixed a copy of the anonymous letter itself. The search warrant was granted and was executed when Gates and his wife returned to their condominium in Bloomingdale, driving the same car in which they had departed West Palm Beach the preceding morning. A search of the trunk of the automobile revealed approximately 350 pounds of marijuana and a further search of the Gates' residence revealed marijuana and other contraband.

The United States Supreme Court reasoned, as it reversed a divided Illinois Supreme Court, that the corroboration by independent police investigative work of major portions of the predictions contained in the anonymous letter, when considered together with the range of details provided in the letter provided a substantial basis for the conclusion that the Gates' were engaged in drug dealing and, thus, was sufficient to constitute probable cause to search the home and car of the Gates'. While acknowledging that "standing alone, the anonymous letter sent to the Blooming-

dale Police Department would not provide the basis for a magistrate's determination that there was probable cause to believe contraband would be found in the Gates' car and home", *id.* 462 U.S. at ——, 103 S.Ct. at 2326, the court observed that it has 'consistently recognized the value of corroboration of details of an informant's tip by independent police work" in its decisions applying the totality of the circumstances test. *Id.* at —— ——, 103 S.Ct. at 2334; *citing Jones v. United States, supra; Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The Court remarked that although "anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs," because the veracity of persons supplying such information is "unknown, and unknowable", "such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.'" *Illinois v. Gates, supra,* 462 U.S. at ——, 103 S.Ct. at 2332. Thus, although conceding that "a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment," the Court opined that "a standard that leaves virtually no place for anonymous informants is not." *Id.*

In *Gates,* the Court observed that the range of details contained in the letter, when considered together with the predictions as to the future actions of the parties which proved remarkably accurate, was of such a character that it "was not unlikely that [the anonymous informant] also had access to reliable information of the Gates' illegal activity." *Id.* at ——, 103 S.Ct. at 2335. Cognizant of the possibility that much of this information might have been learned from an indirect source, the court stated that "[i]t is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gates or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability." *Id.* at ——, 103 S.Ct. at 2336.

■ Similarly, in the instant case, the surveillance by the affiant of the apartment of appellant served to corroborate the information provided by the anonymous informant who

obtained her information from her own son. The police officer affiant himself placed the identified apartment in the project under surveillance the day after receiving the anonymous call; and he heard a male and female discuss prices within the designated apartment and, when the door opened and the male exited, was able to detect a strong odor of marijuana that originated from within the apartment. Thus, the independent investigation by the affiant police officer corroborated not only the "innocent details" of appellee's name, address and telephone number but also confirmed, through his olfactory sense, the presence of burning marijuana, one of the items described by the informant, in the apartment; the conversation overheard by the police officer affiant concerning prices, when combined with the details of the informant's advice and the odor of illicit drugs emanating from within the apartment, provided a substantial basis for the conclusions that drug prices were the subject of discussion, that drugs were being sold inside the apartment and that the activity was of a continuing nature. This police corroboration of the substance of the tip, by itself, was sufficient to establish the credibility of the informant. *See Commonwealth v. Monte,* 459 Pa. 495, 329 A.2d 836 (1974); *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908 (1974); *Commonwealth v. Dial,* 445 Pa. 251, 285 A.2d 125 (1971); *Commonwealth v. Grabowski,* 306 Pa.Super. 483, 452 A.2d 827 (1982); *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327 (1982); *Commonwealth v. Marzel,* 291 Pa.Super. 553, 436 A.2d 639 (1981); *Commonwealth v. Toner,* 289 Pa.Super. 200, 433 A.2d 25 (1981); *Commonwealth v. Zimmerman,* 282 Pa.Super. 286, 422 A.2d 1119 (1980); *Commonwealth v. Whitehouse,* 222 Pa.Super. 127, 292 A.2d 469 (1972); *Commonwealth v. Billock,* 221 Pa.Super. 441, 289 A.2d 749 (1972).

The fact that the informant withheld her name from the police so as to protect her son, the fact of her status as an untested first time informant and the double hearsay nature of her report should not, as the Supreme Court recognized in *Gates,* erect a barrier to effective police use of the information she provided. All that was required

of the magistrate was to determine whether there was, on the basis of the facts supplied within the affidavit, including the corroboration of the information supplied by the independent police investigation, "a fair probability that contraband ... [would] be found in a particular place." *Illinois v. Gates, supra*, 462 U.S. at ——, 103 S.Ct. at 2332. The wealth of detail provided by the informant concerning the purchases of drugs by her son from appellant, including the types of drugs available, the quantities purchased, the prices, the methods of packaging and the explicit account of the arrangements for and the details of the actual purchases by the son, when viewed in conjunction with the independent police corroboration of a number of crucial details provided by the informant, and most significantly, the personal observations of the affiant, furnished an ample informational basis for the determination of the magistrate. Therefore, we hold that the information in the affidavit was clearly sufficient under the totality of the circumstances test set forth in *Illinois v. Gates, supra*, to constitute the probable cause necessary for the issuance of the search warrant.

Order reversed. Case remanded for trial.

Jurisdiction is relinquished.

POPOVICH, J., concurs in the result.