COMMONWEALTH of Pennsylvania, Appellee

v.

Patrick H. OTTERSON, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 14, 2007.

Filed April 29, 2008.

Burton A. Rose, Philadelphia, for appellant.

Patricia E. Coonahan, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: LALLY–GREEN, GANTMAN and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant Patrick H. Otterson appeals from the judgment of sentence entered on July 20, 2006, in the Court of Common Pleas of Montgomery County, following his conviction for possession with intent to deliver ("PWID") marijuana,[1] violation of the Uniform Firearms Act,[2] and related offenses. This case is before us once again on remand from our Supreme Court. We affirm.

¶ 2 The relevant facts and procedural history of this case were fully set forth in the trial court opinion as follows:

On March 30, 2006, [Appellant] was convicted of three separate Bills of Informa-

---

**1.** 35 P.S. § 780–113(a)(30).

**2.** 18 Pa.C.S.A. § 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms).

tion for violation of the Controlled Substance, Drug, Device, and Cosmetic Acts (the "Drug Act") and for possession of a firearm. The main Bill charged three counts of violation of the Drug Act for possession and manufacture of marijuana plants between October 27, 2004[,] and October 29, 2004[,] at 420 West Warren Street, Norristown, Montgomery County, Pennsylvania (hereinafter, the "Warren Street property"). Bill of Information 9849.1 charged the same counts for possession and manufacture of marijuana plants between October 29, 2004[,] and October 30, 2004[,] at 1202–1208 Sterigere Street, Norristown, Montgomery County, Pennsylvania (hereinafter, the "Sterigere Street property"). Bill of Information 9849.2 charged [Appellant] with the same three counts for continuous manufacture and possession of marijuana plants between March 5, 2003[,] and October 30, 2004[,] at both the Sterigere Street property and the Warren Street property. These convictions were the result of events that took place between October 27 and October 30, 2004.

On October 27, 2004, Officer Eugene Parsley of the Norristown Police Department executed a search warrant on the Warren Street property. As a result of the search, the police seized 64 marijuana plants, hydroponic lamps, two light timers, a timer for an air conditioner, duct work, and filter and fluorescent lights, among other items. The Affidavit of Probable Cause executed by Officer Parsley may be summarized as follows:

> On August 31, 2004, Detective Michael Altieri of the Montgomery County Narcotics Enforcement Team received information from Upper Moreland Police Detective James Kelly that a confidential source provided him with information that the Warren Street property was abandoned, and that there was marijuana growing inside the residence at that location. The confidential source stated that he/she has seen marijuana plants growing in pots on the first floor inside that residence;
>
> On August 31, 2004, Detective Altieri went to the Warren Street property to corroborate the information from Detective Kelly. It appeared that the property was locked up; the windows were all covered; and an air conditioner was running on the second floor, front;
>
> A resident of the 400–block of West Warren Street told Detective Altieri that a white male lives at the Warren Street property on a part-time basis; that he drives a silver pick-up truck; only arrives once a week, stays for a couple of hours and then leaves;
>
> Periodic checks of the property by the police revealed that the lights on the first floor stayed on all night. A check of the entire neighborhood by the police failed to locate the pick-up truck;
>
> The detective learned that [Appellant] is the lessee of 420 West [Warren] Street, Norristown, Pennsylvania, and that [Appellant] had been arrested in the past for possession of a small amount of marijuana;
>
> On September 14, 2004, an anonymous female called the Norristown Police to report that marijuana was being grown inside the Warren Street property; that no one lives there, and that it was just a "front." In response to the call, Officer Christopher Narkin went to the location and observed that the residence was locked up, and the windows were covered so no one could see inside. He reported his findings to Detective Altieri because he felt that there was something suspicious

about how the residence was covered up;

On September 16, 2004, a second anonymous female called Detective Altieri and stated that marijuana was growing inside the Warren Street property. She said that a white male arrives about once a week and removes large trash bags from the residence under the cover of darkness and loads them onto his pick-up truck, that the air conditioners and lights operate on a timer, and that the man does not live there. She also said that one of the neighbors has seen marijuana growing on the first floor and that she and the neighbors feared for their safety and preferred to remain anonymous for this reason;

Periodic checks of the property by the investigating police officers during the month prior to the issuance of the search warrant on October 27, 2004[,] failed to reveal any sign of [Appellant] or the pick-up truck. Yet, the lights were seen to be always lit on the first floor, the windows and doors were covered up and the air conditioner was running on the second floor, even in extremely cool weather.

On October 8, 2004, [the trial court] issued a sealed search warrant for the use of a thermal imaging device at the Warren Street property.

On October 12, 2004, the thermal imaging scan was conducted, but due to the cold weather conditions (surrounding properties had their heat on), an accurate reading could not be obtained. Two air conditioners on the second floor were running, despite the cold weather;

On October 27, 2004, Detective Jeffrey Koch reported to Detective Altieri that an unknown female had telephoned the Drug Tip Hotline and left a message that marijuana was growing inside the Warren Street proper-

ty; that no one lives there; that a suspicious male goes to the residence periodically; and that the neighbors have smelled strange odors emanating from the property;

On October 27, 2004, Officer Parsley and Detective Altieri spoke to a confidential informant who told them that he/she smelled the strong odor of "skunk weed" or "homegrown" marijuana coming from the Warren Street property;

On October 27, 2004, Officer Parsley and Detective Altieri also spoke to another confidential informant who reported that he/she personally had seen marijuana growing inside the Warren Street property. This person also said that, after the police began to investigate the property in late August, the occupant appeared to clear up the overgrown weeds and also covered the windows more thoroughly so no one could see inside. The confidential informant also said the air conditioners still go on every night, even with the cold weather;

Both confidential informants said that the occupant only comes to the residence periodically and that he "hasn't been seen there since last week."

While the officers were executing the search warrant at the Warren Street property, [Appellant] arrived. Upon seeing the officers, [Appellant] fled, but was apprehended with his girlfriend a short time later. That same night, [Appellant] was arrested and read his *Miranda* warnings. He gave a statement admitting that he had harvested approximately 50 marijuana plants four months earlier. [Appellant] th[e]n signed a consent to search form for another one of his residences located at 2804 Village Green Lane, Norristown, Montgomery County, Pennsylvania. As a result of

this search, the police seized calendars denoting different harvest dates. Many of these harvest dates overlapped[,] suggesting that [Appellant] had more than one location where he [grew] marijuana. The calendars included harvest dates between March 5, 2003[,]

and October 30, 2004. The calendars and [Appellant's] statement formed the basis for [Appellant's] conviction on Bill of Information 9849.2.

On October 29, 2004, Detective Altieri executed a search warrant on the Sterigere Street property, the address shown on [Appellant's] driver's license. As a result of the search, the police seized a total of 121 potted marijuana plants, calendars, hydroponic lamps, and a double barrel shotgun, among other items.

. . .

Subsequently, [Appellant] filed a motion to suppress the evidence seized pursuant to the search warrants. A hearing on this motion was held on November 3, 2005[,] in front of the Honorable William T. Nicholas. On December 5, 2005, Judge Nicholas entered an Order denying [Appellant's] motion and placed his findings of fact and conclusions of law on the record. [Appellant's] trial was held on March 29, 2006[,] and March 30, 2006. The [trial court] found [Appellant] guilty of the three Bills of Information charging [Appellant] [with] violations of the Drug Act. On July 25, 2006, [Appellant] was sentenced to not less than 5 years on the main Bill, not less than 5 years on Bill of Information 9849.1 and 3 to 5 years on Bill of Information 9849.2. These sentences were to run concurrent with one another. [The trial court] also sentenced [Appellant] to 1 to 5 years for possession of a firearm to run consecutive with the other sentences. [Appellant] appealed his judgment of sentence on July 25, 2006. In accordance with

[Rule] 1925(b) of the Pennsylvania Rules of Appellate Procedure, [the trial court] directed [Appellant] to file a Concise Statement of Matters Complained of on Appeal no later than August 8, 2006. Appellant filed such statement on August 4, 2006.

Trial Court Opinion, 9/5/2006, at 1–5 (footnotes omitted).

¶ 3 This case was previously before this Superior Court panel in 2007. In an unpublished memorandum filed on August 21, 2007, we affirmed Appellant's judgment of sentence. *See Commonwealth v. Otterson*, 938 A.2d 1119 (Pa.Super.2007) (unpublished memorandum). Appellant filed a timely petition for allowance of appeal to the Pennsylvania Supreme Court. In a *per curiam* order filed December 28, 2007, the Supreme Court granted Appellant's petition, vacated this Court's memorandum affirming the judgment of sentence, and remanded the case to this Court for reconsideration in light of *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532 (2001). *See Commonwealth v. Otterson*, 941 A.2d 1255 (Pa.2007).

¶ 4 On appeal, Appellant presents the following issues for our review:

1. Did the [trial court] err in denying the Appellant's Motion to Suppress Evidence seized as the result of an execution of a search warrant which lacked probable cause for 420 W. Warren Street, Norristown, PA?

2. Did the [trial court] err in denying the Appellant's Motion to Suppress evidence seized at 1202 Sterigere Street, Norristown, PA which was tainted by the illegal search and seizure conducted at 420 W. Warren Street and which was not supported by independent and lawfully acquired probable cause?

3. Was the evidence insufficient as a matter of law to establish the Appel-

lant's guilt beyond a reasonable doubt on Bill No. 9849.2 where the [Commonwealth] did not establish that a *corpus delicti* existed as to this offense?

Appellant's Brief at 4.[3]

¶ 5 In his first and second issues, Appellant challenges the denial of his motion to suppress. Appellant first argues that the affidavit filed in support of the search warrant for the Warren Street property did not provide probable cause to search. Appellant claims the affidavit was fatally flawed because it was based on information obtained from confidential informants who did not have a history of reliability, there was no showing of how the informants acquired their information, and the criminal information was not corroborated by independent police investigation. As a result, Appellant claims that the court erred in denying his motion to suppress the evidence obtained from the Warren Street property. *See* Supplemental Brief for Appellant at 8. In his second issue, Appellant asserts that because the Warren Street property search was improper, the warrant obtained for the Sterigere Street property was unlawful as "fruit of a poisonous tree." *Id.* at 17.

■ ¶ 6 We review orders denying a motion to suppress in accordance with the following, well established, standards:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Brown*, 924 A.2d 1283, 1286 (Pa.Super.2007), quoting *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super.2002).

■ ¶ 7 Our Supreme Court has adopted the "totality of the circumstances" test for determining whether a search warrant was supported by probable cause. *See Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). This test was first set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Pursuant to the totality of the circumstances test:

[T]he task of the issuing authority is to make a practical, common sense assessment whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Further, [a] magistrate's finding of probable cause must be based on facts described within the four corners of the affidavit[.]

*Commonwealth v. Jones*, 928 A.2d 1054, 1059 (Pa.Super.2007) (internal quotes and citations omitted).

"[P]robable cause does not demand the certainty we associate with formal trials." [*Gates*, 462 U.S. at 246, 103 S.Ct. 2317.] Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." [*Torres*,

---

**3.** In his supplemental brief filed post-remand, Appellant did not raise the third issue challenging the Commonwealth's failure to establish the *corpus delicti* of the drug offense. Nevertheless, because our initial memorandum disposing of this claim was vacated, we will again address this issue in the instant memorandum.

764 A.2d at 537, *quoting Gates*, 462 U.S. at 238–239, 103 S.Ct. 2317]. Thus, where the evidence available to police consists of an anonymous tip, probable cause may be established upon corroboration of major portions of the information provided by the tip. *See Gates*, 462 U.S. at 246, 103 S.Ct. 2317. Similarly, where the evidence consists of the allegations of a police informant who has not previously provided information, probable cause requires only corroboration of principal elements of information not publicly available. *See Torres*, 764 A.2d at 539–540. As recognized by the Court in *Gates*, "[i]t is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" [*Gates*, 462 U.S. at 244–245, 103 S.Ct. 2317, *quoting Jones v. United States*, 362 U.S. 257, 269, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).]

*Brown*, 924 A.2d at 1286–1287.

¶ 8 Our Supreme Court remanded the instant case to this panel for our consideration in light of *Torres*.[4] Therefore, we will review that case in detail. Torres was arrested and charged with three counts of homicide after the police found two guns and other incriminating items during a search of his apartment conducted pursuant to a warrant. Torres filed a pre-trial motion to suppress the evidence found in his apartment, asserting that the warrant was not supported by probable cause. Following a hearing, the suppression court found that the affidavit of probable cause filed with the warrant application was "frustratingly sparse" in that it merely set forth in narrative form the information that the affiants had learned without clearly explaining where they obtained each piece of information. *See Torres*, 764 A.2d at 538. Further, the court found that there was no way for the issuing authority to tell from the affidavit how the anonymous sources cited therein had obtained their information.[5] Finally, the suppression court found that the only corroboration that imparted any reliability to the information obtained from the anonymous sources was the officers' observations of a vehicle outside Torres' apartment complex that matched the general description of the get-away car at the murder scene. In light of the lack of information regarding the basis of the unnamed sources' knowl-

---

**4.** *Torres* involved consolidated appeals from two co-defendants. The Supreme Court explained that judicial economy was best served by disposing of the two appeals together because the police used the same affidavit of probable cause to support their applications for search warrants to both defendants' apartments located at 5631 Rippey Street in Pittsburgh, Pennsylvania. *See Torres*, 764 A.2d at 535. For our purposes in the instant matter, we note that our discussion of the *Torres* case reflects only the facts and holding of the Supreme Court with respect to the defendant identified as "Torres" in that case.

**5.** The affidavit at issue in *Torres* identified the witnesses as follows:

Numerous interviews have been conducted in this case. The identity of these witnesses is known to your affiants. These witnesses will be available to testify at any necessary court proceedings.

*Torres*, 764 A.2d at 535. The Supreme Court explained that the tipsters were properly considered "anonymous sources" by the lower courts because "since none of them [was] named, there was no indication that any of them had previously provided information to the police and no reason was given for the failure to divulge their names." *Id.* at 537 n. 3.

edge or their veracity, as well as the failure of the affidavit to credit each piece of information to one of the sources, the suppression court concluded that the corroborated information was insufficient to sustain the search warrant. *Id.* As such, the court granted the defendant's motion to suppress.

¶ 9 The Commonwealth appealed to this Court. We held that although the affidavit failed to expressly establish either the veracity of anonymous sources or the basis for their knowledge, the information that they provided to the police was sufficiently bolstered by certain indicia of reliability. *See Commonwealth v. Torres,* 714 A.2d 416, 420 (Pa.Super.1998). As such, we concluded that the affidavit provided the issuing authority with a substantial basis to support his finding of probable cause to search, and reversed the order granting the defendant's motion to suppress.

¶ 10 On appeal, our Supreme Court reversed. The Supreme Court held that this Court "gave too much weight to the indicia of reliability attending the information included in the affidavit" and therefore erred in reversing the suppression order. *Torres,* 764 A.2d at 539. The Court rejected the Commonwealth's claim that a common-sense reading of the affidavit indicated that at least one of the anonymous sources had personal knowledge of the events in question. The Supreme Court explained that:

> [T]he mere fact that one or more of the anonymous sources provided a somewhat detailed account of the activities of the victims and their assailants preceding the murders does not, in and of itself, constitute a significant indicia of the reliability of that information. In addition, the fact that the police verified the address, phone number and general

age given to them for Torres—whose address and phone number were listed in the phone book and were therefore freely available to the public—does not constitute a significant indicia of the reliability of the other information provided to the police by the anonymous sources.

*Id.*

¶ 11 The Supreme Court also distinguished *Torres* from the United States Supreme Court's holding in *Gates,* noting that the information provided by the anonymous sources in *Gates* contained not only a detailed account of the defendant's activities in furtherance of the crime, but also a correct prediction of future criminal acts. *Id.* at 539 n. 7. No such predictive information was provided by the anonymous sources in *Torres.* Finally, the Court explained that the affiant's observation of the vehicle parked outside Torres' apartment complex (which matched the description of the car seen fleeing from the murder scene) was not sufficient corroboration of the anonymous source's information. The Court explained that there was no clear indication in the affidavit as to how the police obtained their description of the fleeing vehicle. Even though the affidavit explained that the vehicle had a New York license plate, which was consistent with information that Torres indicated he was from New York, the affidavit did not provide that the police linked the plate to Torres or his co-defendant. *Id.* at 539–540.

¶ 12 The Supreme Court concluded in *Torres:*

> Although the basis of knowledge and veracity of anonymous sources are only factors to be considered by the issuing authority in making probable cause determinations, they retain a vital role in

cases such as the instant one, where the affidavit of probable cause is almost entirely based on information gleaned from anonymous sources. **Where, as here, there is no attempt made to establish either the basis of knowledge of the anonymous sources or their general veracity, a strong showing of the reliability of the information that they have relayed to the police in the specific case is required in order to support a finding of probable cause.** Such a showing is simply not made by the affidavit of probable cause in the instant case.

*Id.* at 540 (emphasis added).

¶ 13 The case presently before us is distinguishable from *Torres*. The affidavit at issue here was presented as part of the application for a search warrant on October 27, 2004. The affiant provided that on August 31, 2004, a confidential source advised Detective James Kelly of the Upper Moreland Police Department that the Warren Street property was abandoned and that marijuana plants were growing inside. That day, Detective Altieri went to the Warren Street property and found the property locked up, the windows covered, and the air conditioning unit on the second floor turned on. In addition, the back deck of the property was overgrown with weeds. The affidavit provided that Detective Altieri spoke to an unidentified neighbor who informed him that a white male typically arrived at the Warren Street property once per week, stayed a few hours, and then would leave. The neighbor stated that the man drove a silver pickup truck.

¶ 14 The affidavit further provided that Sergeant Robert Sobeck of the Norristown Police Department performed periodic checks of the Warren Street property. During these checks, he noticed that there was no change in the condition of the property and the lights on the first floor stayed on all night. In addition, the affidavit indicated that Detective Altieri's investigation revealed that Appellant was the lessee of the property and that he had previously been arrested for possession of marijuana.

¶ 15 The affidavit also cited two tips from anonymous females.[6] The first anonymous tip provided that nobody lived at the Warren Street property and that it was being used as a "front" for a marijuana growing operation. The second anonymous source indicated that a white male visited the property once per week and was seen removing large trash bags under cover of darkness. The affidavit indicated that the second anonymous female stated that she and her neighbors wished to remain anonymous out of fear for their safety.

¶ 16 The affiant indicated that in the month prior to filing the application for a search warrant, he continuously checked the property and found no sign of Appellant or his vehicle. During the checks in the middle of the night, the affiant noticed that the lights remained on, the air conditioning remained on, and the windows and doors remained covered.

¶ 17 The affidavit provided that a warrant to use a thermal imaging device on the property was obtained on October 8, 2004. The thermal imaging scan was conducted on October 12, 2004. Due to cold weather conditions, an accurate reading could not be obtained. Nevertheless, the

6. We note that it is unclear from the affidavit whether there were two separate anonymous female sources, or two separate tips from the same source.

scan revealed two air conditioners running on the second floor of the property.

¶ 18 The affidavit also provided that the affiant spoke with two confidential sources. One of these sources stated that he/she smelled "skunk weed," a term commonly used to describe home grown marijuana, coming from the Warren Street property. The other source informed the affiant that he/she personally saw marijuana growing inside the Warren Street property and that after the police began "snooping" around in late August, a person came and cleaned out overgrown weeds in the rear of the property and covered the windows more thoroughly. Both sources stated that the occupant came home only periodically and had not been there within the previous week. Again, the affidavit stated the confidential informants did not want their identity revealed because they feared retaliation.

¶ 19 Here, unlike in *Torres*, the affidavit in question provided information regarding the basis of the confidential sources' knowledge. For example, the affidavit specifically provided that one of the confidential sources told the affiant that he/she **smelled** "skunk weed," and another source said they **saw** marijuana growing inside the Warren Street property. In addition, the veracity of the sources' information was corroborated by independent police investigation. After the first anonymous tip on August 31, 2004, multiple law enforcement officers began periodic checks of the property. They saw the property as the multiple sources described it with windows covered and air conditioning units running inside. Furthermore, the officers attempted to conduct a thermal imaging scan of the property. Although the scan provided inconclusive results, it did reveal air conditioning units running inside the property in cold weather, as multiple sources had indicated to police. While the information that the officers corroborated was not necessarily criminal in nature, it was consistent with a marijuana growing operation. Finally, the information that was corroborated by the officers in this case was not "publicly available" in the same sense as the information corroborated by the affiant in *Torres*, who simply corroborated the source by looking in the phone book.

¶ 20 We have reviewed the four corners of the affidavit filed in support of the search warrant for Appellant's Warren Street property. We conclude that the affidavit provided a substantial basis to support the issuing authority's finding of probable cause to search. Furthermore, because we conclude the search of the Warren Street property was legal, it follows that Appellant's claim that the evidence obtained from the Sterigere Street property is fruit from a poisonous tree also fails. Accordingly, we will not disturb the suppression court's denial of the motion to suppress. Appellant's first two issues are without merit.

■ ¶ 21 In Appellant's final issue he claims that the evidence was not sufficient to support his conviction on Bill 9849.2 for possession of marijuana with intent to distribute. More specifically, Appellant argues the Commonwealth failed to establish the *corpus delicti* for the crimes charged on Bill 9849.2. Appellant claims that the evidence the trial judge relied upon in finding him guilty was limited to his oral and written admissions that he possessed 21 to 50 marijuana plants between March 5, 2003 and October 30, 2004. He asserts that the court erred in relying on his admissions because there was no evidence presented that the crime occurred. He

claims, therefore, that his admissions should not have been considered by the court in reaching its verdict. *See* Appellant's Brief at 29.

¶ 22 Initially, we point out that even though Appellant has framed his argument as a challenge to the sufficiency of the evidence, the *corpus delicti* rule applies to the admissibility of evidence. *See Commonwealth v. Dupre*, 866 A.2d 1089, 1097 (Pa.Super.2005), *appeal denied,* 583 Pa. 694, 879 A.2d 781 (2005). "Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion." *Id.* To the extent that Appellant's argument challenges the sufficiency of the evidence, we note that our standard of review for such claims is also limited:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. McCall,* 911 A.2d 992, 996 (Pa.Super.2006).

¶ 23 The *corpus delicti* rule provides that the Commonwealth bears a burden of showing that the charged crime actually occurred before a confession or admission by the accused can be admitted as evidence. *See Commonwealth v. Rivera,* 828 A.2d 1094, 1103 (Pa.Super.2003), *appeal denied,* 577 Pa. 672, 842 A.2d 406 (2004). "The *corpus delecti* [sic] is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone." *Id.* "The purpose of the *corpus delicti* rule

is to guard against 'the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed.'" *Commonwealth v. Edwards,* 588 Pa. 151, 903 A.2d 1139, 1158 (2006), *quoting Commonwealth v. Reyes,* 545 Pa. 374, 681 A.2d 724, 727 (1996) ("*Reyes I* ").

¶ 24 In *Commonwealth v. Reyes,* 582 Pa. 317, 870 A.2d 888 (Pa.2005) ("*Reyes II*"), our Supreme Court explained that Pennsylvania law requires courts to apply the *corpus delicti* rule in two phases:

> In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession of the defendant is admissible. In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession in assessing the defendant's innocence or guilt.

*Id.* at 894 n. 4 (citations omitted).

¶ 25 Pennsylvania has adopted an exception to the *corpus delicti* rule. This exception, known as the "closely related crimes" exception, provides:

> [W]here a defendant's confession relates to separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crimes. This exception applies only where the relationship between the crimes is sufficiently close so as to ensure that the purpose underlying the *corpus delicti* rule, *i.e.,* to prevent conviction where no crime has occurred, is not violated.

*Dupre,* 866 A.2d at 1099.

¶ 26 In the instant matter, the record reflects the following. The Common-

wealth initially filed 23 separate Bills of Information charging Appellant with multiple violations of the Drug Act between the dates of March 5, 2003 and October 30, 2004. The location of these offenses was both the Warren Street and the Sterigere Street properties. The Commonwealth consolidated the charges into one Bill, number 9849.2, because all of the charges stemmed from a continuous course of conduct by Appellant. *See N.T.*, 3/29/03, at 25–30.

¶ 27 Following his arrest, on October 27, 2004, Appellant made a statement to police in which he admitted that he had been growing and selling marijuana for over one and one-half years. Appellant argues that this statement should not have been admitted into evidence or considered by the court in reaching its verdict because the *corpus delicti* of the crime was not established. We disagree.

¶ 28 The record reflects that the Commonwealth introduced into evidence several photographs showing Appellant with marijuana plants. In addition, the Commonwealth introduced numerous calendars that had been found during the search of Appellant's properties. On these calendars, on specific dates, were handwritten notes indicating when plants were to be watered as well as projected harvesting dates and other information related to harvesting. These dates spanned from March 2003, through October 2004. Furthermore, the search of Appellant's Warren and Sterigere Street properties revealed multiple marijuana plants at these locations. This combined evidence was certainly sufficient to establish by a preponderance of the evidence that Appellant was involved in an ongoing operation of growing marijuana. Therefore, the *corpus delicti* was sufficiently proven and the court

did not abuse its discretion in admitting Appellant's statement to police into evidence. Moreover, the combined evidence was sufficient to establish beyond a reasonable doubt that Appellant violated the Drug Act between March 2003 and October 2004. Therefore, we conclude that the trial court did not act erroneously or abuse its discretion in considering Appellant's admission in reaching its verdict. *Reyes II.*

¶ 29 Furthermore, even if the *corpus delicti* for the crimes charged in Bill 9849.2 was not established by independent evidence, we nevertheless would affirm the trial court based on the "closely related crimes" exception. At the very least, Appellant's statement to the police was related to his other drug charges on Bills 9849 and 9849.1. The *corpus delicti* for those charges is not in dispute. Therefore, because independent evidence established the *corpus delicti* of the other crimes charged, Appellant's confession was properly considered as evidence for the closely related charges on Bill 9849.2. *Dupre.*

¶ 30 For the reasons set forth above, Appellant's conviction on Bill of Information 9849.2 was supported by sufficient evidence. Appellant's arguments to the contrary fail. Accordingly, we affirm the judgment of sentence.

¶ 31 Judgment of sentence affirmed.