J. A19003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MANFRED PHILLIP MAROTTA, | : | No. 3407 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 8, 2015,
in the Court of Common Pleas of Bucks County
Criminal Division at No. CP-09-CR-0001335-2015

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 08, 2016**

Manfred Phillip Marotta appeals from the October 8, 2015 aggregate judgment of sentence of 4 to 23 months' imprisonment, followed by a consecutive term of 2 years' probation, after he was found guilty of two counts of indecent assault--without the complainant's consent.[1]  After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> The charges against [a]ppellant stemmed from his conduct towards two alleged victims; E.S., his niece, and H.M., a former manager at one of the Dunkin Donuts shops owned by [a]ppellant.  At trial,

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126(a)(1).

both E.S. and H.M. testified as to [a]ppellant's conduct towards them.

E.S. testified that [a]ppellant started giving backrubs and massages to her when she was 18 or 19 years old, and that this eventually progressed into more intimate contact. (Notes of testimony, 6/29/15 at 27-28.) E.S. lived with [a]ppellant, and relied on him for income and stability, as she also worked at one of his Dunkin Donuts shops. (**Id.** at 20-21, 29-35.) At the bench trial, E.S. testified:

> I would come down after work and I would be stressed out, and he would want to calm me down or find an answer to help me relax or de-stress, and he would say, come over here, you look stressed out, you need to relax. And then he would rub my back, and then progressively it got to [sic] pull my pants down and he would rub my butt. And then sometimes he would like spread my legs apart and rub in between my thighs, and a few of the times he had put his fingers in my vagina and touched around my vagina and inside of it.

(**Id.** at 28.) E.S. also stated that she never wanted her uncle to touch her in a sexual manner, and that she was intimidated by his physical size. (**Id.** at 29, 32.) Further, E.S. stated that [a]ppellant touched her vagina about ten times and put his fingers inside of her between five and six times. (**Id.** at 34.)

E.S. decided to come forward about [a]ppellant touching her when she heard that he may have touched another worker at Dunkin Donuts, H.M., and felt that her coming forward could help prevent anyone else from being victimized in the future. (**Id.** at 36-37.) E.S. testified that she never felt like her uncle's touching of her was okay or right. (**Id.** at 44-45.) Further, E.S. stated that she never wanted her uncle to touch her in a sexual way and there were times where she felt like she couldn't just get

up and walk away, largely due to the potential consequences of her doing so, i.e. not having a place to live, not having a job, not having support, and losing her family. (*Id.* at 119-120.)

H.M. also testified at trial on June 29, 2015. H.M. was a manager at Dunkin Donuts after E.S. held this position. (*Id.* at 132.) As manager of one of [a]ppellant's Dunkin Donuts, H.M. had to drop money off at [a]ppellant's house at the end of every shift, and she was not comfortable with this arrangement. (*Id.* at 139.) H.M. testified that there were two incidents where [a]ppellant touched her. (*Id.* at 140-141.) In regard to the first incident, H.M. testified:

> Well, the one night I went to his house for training and I was sitting next to him in front of the computer, and I felt really uncomfortable because it was just me and him at the house, first of all, so I felt like that was uncomfortable and unnecessary. And then I was sitting training with him, and he was rubbing the inside of my leg while I was sitting next to him training.

(*Id.* at 141.) H.M. clarified that [a]ppellant was rubbing "the inside [of her legs] towards like where [her] vagina is." (*Id.*)

In regard to the second incident, H.M. testified that she went to [a]ppellant's house "to drop off the money after [her] shift at work, and [she] put it on the table, and then [[a]ppellant] looked at [her] and told [her] that [she] looked stressed out . . . [and] then he pointed – he brought [her] over to his bedroom and pointed to his bed and said, lay (sic) down." (*Id.* at 145.) H.M. stated that she "didn't feel like [she] had a choice [but to listen to [a]ppellant] because [she was] much smaller than him and much weaker, so [she] was intimidated, and [she] did it." (*Id.*) H.M. went on to explain that after [a]ppellant told her to lay (sic) face down on

the bed, he asked to take her shirt off, asked to take her bra off, started massaging her, and eventually pulled her pants down and started massaging the skin of her butt under her underwear. (*Id.* at 146-149.) Appellant was breathing deeply in a sexual manner the entire time, and H.M. stated that she was "very intimidated" and "very scared." (*Id.* at 148, 165, 176.) H.M. elaborated that:

> [She] felt like if [she] would have gotten up and ran out of the house, something might have happened to [her]. [She] didn't feel safe. It was only [her] and [[a]ppellant] in the house, and [she] was under pressure. [She] didn't know how to act, [she] was only 19 years old . . . [.]

(*Id.* at 147.) It was also noted by H.M.:

> I didn't want any of that to ever happen to me. I wouldn't have ever asked for that, and I would never want some man, who is that much older and who's my boss to want to be treating me like that. I would never want that.

(*Id.* at 183.)

The second day of trial was on June 30, 2015, and [a]ppellant's counsel, Mr. Geday, started off the proceedings by raising a *corpus delicti* issue in regard to evidence that he anticipated would be introduced by the Commonwealth. (Notes of testimony, 6/30/15 at 4-5.) Appellant's counsel argued that the evidence presented so far in the trial was insufficient to establish that the crimes charged had occurred, and therefore that no subsequent statements by [a]ppellant should be admissible and considered. (*Id.*) In response, the [trial c]ourt found that based on the record there was sufficient evidence to warrant testimony involving any statements that [a]ppellant may have made. (*Id.* at 7.)

- 4 -

On the second day of trial there was testimony from Detectives David Kemmerer and Robert McLeod regarding statements made by [a]ppellant. (*See id.* at 2.) Detective McLeod read into the record an apology letter written by [a]ppellant to E.S., in which [a]ppellant stated that he admitted to touching her. (*Id.* at 50.) Further, Detective Kemmerer testified as to his interviews with [a]ppellant, during which [a]ppellant admitted to touching E.S.'s vagina and stated that he was sexually attracted to her. (*Id.* at 78-79.)

At the close of trial, before beginning argument, the [trial c]ourt, after hearing all of the evidence, asked if the Commonwealth was still alleging the same time frames as stated on the criminal information with respect to the charges brought in regard to H.M. (*Id.* at 188.) The Commonwealth initially alleged a timeframe between January and the end of March of 2013. In response to the [trial c]ourt's inquiry, and based on H.M.'s testimony, the Commonwealth requested to be granted leave to amend the timeframe on the criminal information to include April of 2013. (*Id.*) Appellant's counsel objected to this, saying that it was too late for the Commonwealth to make modifications to the criminal information after evidence had closed, and that allowing amendment amounted to an impermissible retroactive change to the charges. (*Id.* at 188-189.) The Commonwealth countered that criminal informations are typically broadly construed, that the change did not impact an element of the offense, and that the Commonwealth was not seeking to substantively change any of the crimes being charged. (*Id.*) The [trial c]ourt ultimately stated that amendment of criminal informations is generally allowed as long as there is no inherent unfairness to the defendant and that under the circumstances the Commonwealth would be allowed to amend the criminal information to include April of 2013 as a potential time period with respect to the counts regarding H.M. (*Id.* at 190-191.)

Trial court opinion, 12/24/15, at 2-5 (citation formatting corrected; footnotes omitted).

Appellant was charged with multiple counts of aggravated indecent assault and indecent assault in connection with these incidents.[2] On June 29, 2015, appellant waived his right to a jury and proceeded to a bench trial. Following a two-day trial, appellant was found guilty of two counts of indecent assault--without the complainant's consent on June 30, 2015. Appellant was found not guilty of the remaining charges. As noted, appellant was sentenced to an aggregate term of 4 to 23 months' imprisonment, followed by a consecutive 2 years' probation, on October 8, 2015. At sentencing, the trial court directed that appellant:

> [(1)] have no contact with the victims or their families[;] . . . [(2)] obtain an independent psychological evaluation geared toward looking into predatory sexual behavior and . . . abide by all the treatment conditions following that recommendation[; and (3)] have no contact with anyone under 22 years of age which is unsupervised and where you will be alone with that person.

Notes of testimony, 10/8/15 at 74-75.

---

[2] Specifically, appellant was charged with one count each of 18 Pa.C.S.A. §§ 3125(a)(1) (aggravated indecent assault--without the complainant's consent), 3125(a)(2) (aggravated indecent assault--forcible compulsion), 3125(a)(3) (aggravated indecent assault--threat of forcible compulsion), and two counts each of 18 Pa.C.S.A. §§ 3126(a)(1) (indecent assault--without the complainant's consent), 3126(a)(2) (indecent assault--forcible compulsion), and 3126(a)(3) (indecent assault--threat of forcible compulsion).

Appellant did not file any post-sentence motions. On November 9, 2015, appellant filed a timely notice of appeal. On November 16, 2015, the trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant filed his Rule 1925(b) statement on December 7, 2015, and the trial court issued its Rule 1925(a) opinion on December 24, 2015.

Appellant raises the following issues for our review:

I. Whether the Honorable Trial Court erred by finding [a]ppellant guilty of Indecent Assault when the Commonwealth failed to Prove Beyond a Reasonable Doubt all Requisite Elements of Indecent Assault as Defined in 18 Pa.C.S.A. § 3126(a)(1), specifically that [a]ppellant ever had indecent contact with the complaining witness or that such contact was without consent?

II. Whether the Honorable Trial Court erred by admitting into evidence and considering [a]ppellant's statements prior to the Commonwealth establishing the ***corpus delicti*** of a crime, or the fact that a crime occurred at all?

III. Whether the Honorable Trial Court erred by permitting the Commonwealth to amend the Bills of Information after the trial concluded to conform to the evidence that was presented during trial, i.e., to extend the permissible date range by a month, especially because [a]ppellant was never on notice of the new date range prior to trial?

IV. Whether the Honorable Trial Court erred by imposing a condition of sentence upon [a]ppellant that he have no unsupervised contact with anyone under the age of 22?

Appellant's brief at 4 (numeration corrected).

Appellant first argues that there was insufficient evidence to sustain his conviction for two counts of indecent assault because the Commonwealth failed to prove that he "had indecent contact with the complaining witnesses without their consent." (*Id.* at 13, 15-19.) This claim is meritless.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009), *appeal denied*, 4 A.3d 1054 (Pa. 2010) (citations omitted).

A person will be found guilty of indecent assault:

> if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1). The phrase "indecent contact" is defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." *Id.* § 3101.

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was ample evidence for the trial court, as fact-finder, to conclude that appellant was guilty of indecent assault--without the complainant's consent. At trial, E.S. testified that appellant touched her vagina on approximately ten occasions, and "put his fingers inside of [her]" between five or six times. (Notes of testimony, 6/29/15 at 34.) E.S. indicated that she did not want appellant to touch her in this sexual manner and did not feel it was "okay." (*Id.* at 29, 44-45.) H.M., in turn, testified that appellant had rubbed or massaged the inside of her legs, back, and buttocks on multiple occasions. (*Id.* at 140-141, 148-149.) H.M. further testified that she did not want appellant to engage in such "inappropriate" conduct, noting that "I would never want some man, who is that much older and who's my boss to want to be treating me like that[.]" (*Id.* at 183.) Moreover, both E.S. and H.M. testified that they were intimidated by appellant because he was larger in size and held a position of authority over them. (*Id.* at 30-32, 176, 183-184.)

Additionally, the Commonwealth introduced the testimony of Detectives David Kemmerer and Robert McLeod regarding various inculpatory statements appellant made following his arrest. Specifically,

Detective McLeod read into the record an apology letter written by appellant to E.S., wherein he stated that he touched E.S. (Notes of testimony, 6/30/15 at 50.) Detective Kemmerer, in turn, testified that during his interview of appellant, appellant acknowledged touching E.S.'s vagina and stated that he was sexually attracted to her. (*Id.* at 78-79.)

It is well established that the testimony of a complainant, even standing alone, is sufficient to convict in sex offense prosecutions. *See Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa.Super. 2005). Based on the totality of evidence presented in the case *sub judice*, we conclude that appellant's claim that there was insufficient evidence to sustain his convictions for indecent assault must fail.

Appellant next argues that the trial court erred in admitting his inculpatory statements because the Commonwealth failed to establish "the *corpus delicti* of a crime, or the fact that a crime occurred at all." (Appellant's brief at 20.) We disagree.

Our standard of review for a challenge to the *corpus delicti* rule is well settled.

> The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof

that a loss or injury has occurred as a result of the criminal conduct of someone.

*Commonwealth v. Hernandez*, 39 A.3d 406, 410-411 (Pa.Super. 2012), *appeal denied*, 63 A.3d 1244 (Pa. 2013) (citation, internal quotation marks, and emphasis omitted).

Courts in this Commonwealth have recognized that Pennsylvania law requires courts to apply the *corpus delicti* rule in two distinct phases:

> In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession of the defendant is admissible. In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession in assessing the defendant's innocence or guilt.

*Commonwealth v. Otterson*, 947 A.2d 1239, 1249 (Pa.Super. 2008), *appeal denied*, 958 A.2d 1047 (Pa. 2008), *cert. denied*, 556 U.S. 1238 (2009), quoting *Commonwealth v. Reyes*, 870 A.2d 888, 894 n.4 (Pa. 2005).

Instantly, we discern no abuse of discretion on the part of the trial court in rejecting appellant's *corpus delicti* claim. The record establishes that the *corpus delicti* of the indecent assaults was sufficiently proven by the Commonwealth prior to the admittance of appellant's inculpatory statements. As discussed, the Commonwealth sought to introduce the inculpatory statements at issue, over appellant's objection, on June 30,

2015, the second day of trial. Prior to this time period, the trial court had already heard extensive testimony from both E.S. and H.M. on the first day of trial that was consistent with the indecent assaults having occurred.

Accordingly, we conclude that the **corpus delicti** of the indecent assaults was sufficiently proven and the trial court did not abuse its discretion in admitting appellant's inculpatory statements into evidence. Additionally, as the evidence was sufficient to establish beyond a reasonable doubt that appellant had indecent contact with both E.S. and H.M. without their consent, we conclude that the trial court did not abuse its discretion in considering appellant's admissions in reaching its verdict. **See Otterson**, 947 A.2d at 1249.

Appellant next argues that the trial court "erred by permitting the Commonwealth to amend the Bills of Information after the trial concluded to conform to the evidence that was presented during trial, **i.e.**, to extend the permissible date range by a month, especially because [he] was never on notice of the new date range prior to trial." (Appellant's brief at 21.)

Amendments to a criminal information are governed by Pennsylvania Rule of Criminal Procedure 564, which provides as follows:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

We have explained that the purpose of Rule 564 is to inform a defendant of the charges filed against him so that he may properly prepare a defense. *Commonwealth v. Sinclair*, 897 A.2d 1218, 1223 (Pa.Super. 2006). Allowing the amendment of the information is not proper where doing so prejudices the defendant. *Id.*

This court must consider the following factors in determining whether an amendment results in prejudice to the defendant:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Commonwealth v. Veon*, 109 A.3d 754, 768 (Pa.Super. 2015), *appeal granted in part*, 121 A.3d 954 (Pa. 2015) (citation omitted).

Upon review, we agree with the trial court's determination that appellant was not prejudiced by the Commonwealth's decision to amend the bill of information in this case. The trial court's December 24, 2015 opinion comprehensively discusses and properly disposes of this issue, and therefore, we adopt the following rationale of the trial court as our own:

Here, it was not error to allow the Commonwealth to amend the bill of information to extend the timeframe in which the incidents were alleged to have occurred by a period of one month, because the amendment did not change or add any charges brought against [a]ppellant, and therefore did not prejudice [a]ppellant as he was always on notice of the charges against him. Just as in [***Commonwealth v. J.F.***, 800 A.2d 942 (Pa.Super. 2002), ***appeal denied***, 812 A.2d 1228 (Pa. 2002)], in the present case the Commonwealth amended the bill of information to "merely change[] the date" by a period of one month, and "neither additional charges nor a different set of events were added to the information . . . [and] the offenses set forth in the amendment[] involved the same . . . elements and the same factual situations as specified in the original information[]." [***Id.*** at 945.] Accordingly, we suggest that it was not error to allow the Commonwealth to amend the bill of information to extend the time frame alleged in regard to the incidents involving H.M. by a period of one month.

Trial court opinion, 12/24/15 at 13 (citation formatting amended).

Lastly, appellant argues that the trial court "erred by imposing a condition of sentence upon [a]ppellant that he have no unsupervised contact with anyone under the age of 22." (Appellant's brief at 23 (capitalization omitted).) Appellant avers this condition "is unreasonable because it is so broad, unrelated to [his] rehabilitative needs . . ., and unduly restricts his liberty." (***Id.*** at 25.) Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. ***See Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary

aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Carrillo-Diaz**, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

"[I]ssues challenging the discretionary aspects of sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Commonwealth v. Barnhart**, 933 A.2d 1061, 1066-1067 (Pa.Super. 2007) (citations and internal quotation marks omitted); **see also** Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[]").

Instantly, appellant failed to file a post-sentence motion raising his sentencing claim, or point to the place in the record that indicates he objected to the sentencing condition that he was to have no unsupervised contact with anyone under the age of 22. Consequently, we find that appellant's final claim is waived. **See Barnhart**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/8/2016</u>